# In the United States District Court
# for the
# Western District of Texas

| | | |
|---|---|---|
| CHERYL WILKENS, ET AL | § | |
| | § | |
| v. | § | SA-09-CV-515-XR |
| | § | |
| TOYOTETSU AMERICA, INC. | § | |

## ORDER

On this day came to be considered Toyota Motor Engineering & Manufacturing North America, Inc.'s (TEMA) motion to dismiss (Docket Entry No. 50) and Toyota Motor North America, Inc. (TMNA) and Toyota Motor Sales, U.S.A., Inc.'s (TMS) motion to dismiss (Docket Entry No. 51).

### Background

Cheryl Wilkens, Irma Rocha and Yoko Tokushima (Plaintiffs) are current or former employees of Toyotetsu Texas, Inc. (TTTX). They bring this Title VII sex discrimination case on behalf of themselves and other similarly situated employees, former employees and future employees of TTTX, Toyotetsu America, Inc. (TTAI), and Toyotetsu Mid America, Inc. (TTMA). No named plaintiff alleges, however, that they were ever employed by TTAI or TTMA.

Plaintiffs seek to recover monetary damages and injunctive relief from not only TTTX, but also TTAI, TTMA, Toyota Motor North America, Inc. (TMNA), Toyota Motor Sales, U.S.A., Inc. (TMS), and Toyota Motor Engineering & Manufacturing North America, Inc. (TEMA).

Plaintiffs allege that all of the Defendants engage in systematic discrimination against female

employees in hiring, compensation, promotion, mentoring, training and resource allocation.[1] They further assert that TTAI, TTMA and TTTX permit or condone sexual harassment.[2] No sexual harassment allegation is lodged against TEMA or TMNA.

Plaintiffs further allege that female employees are subject to a "glass ceiling" at TTAI, TTMA and TTTX and that female employees are "routinely assigned to the lowest-paying positions and given little to no opportunity to advance to higher-ranking positions."[3] No such allegations are lodged against TEMA or TMNA.

Plaintiffs allege that imposition of a "glass ceiling" was instituted by Toyota Motor Corporation and Plaintiffs allege that this is part of the "Toyota Way."[4] Toyota Motor Corporation is not named as a Defendant in this case.

Plaintiffs allege that Toyota Motor Corporation has a practice of rotating "Japanese male executives into management and supervisory level positions with entities such as Toyota USA,[5] TTAI, TTMA and TTTX" to ensure that "all aspects of the real Toyota Way" are adopted, including gender discrimination.[6]

Plaintiffs allege that TTTX is an automotive manufacturing facility that supplies TEMA with welded structural body components,[7] and that TTTX, TMNA and TEMA are wholly owned

---

[1] Second Am. Complaint (Docket Entry No. 44) at ¶ 1.

[2] Id. at ¶ 2.

[3] Id. at ¶ 4.

[4] Id. at ¶ 5.

[5] TMNA, TMS and TEMA are identified as Toyota USA in ¶ 1 of the Second Amended Complaint.

[6] Id. at ¶¶ 64-67, 69 and 70.

[7] Id. at ¶ 13.

subsidiaries of Toyota Motor Corporation.[8]

Plaintiffs allege that "Toyota USA shares the collective responsibility of introducing [and maintaining] the Toyota Way in the United States to employees ... of TTAI, TTMA and TTTX."[9]

The Amended Complaint contains numerous detailed allegations regarding TTTX.

### TEMA's Motion to Dismiss

TEMA argues that the claims alleged against it should be dismissed pursuant to FED. R. CIV. P. 12(b)(1) and (6). TEMA argues that since Plaintiffs do not allege that they were employees of TEMA, no cause of action exists under Title VII. Alternatively, it argues that TEMA was never named as a respondent in any pre-litigation proceeding before the Equal Employment Opportunity Commission.[10] Accordingly, it argues that Plaintiffs failed to exhaust their administrative remedies, requiring that the allegations be dismissed.[11] TEMA argues that Plaintiffs' "vague, conclusory and unspecific" claims of an alleged conspiracy with Toyota Motor Corporation fail under *Ashcroft v. Iqbal*.[12] TEMA argues that Plaintiffs fail to allege that TEMA and TTTX have any interrelation of operations, centralized control of labor relations, and common management or any other factors to subject TEMA to liability under a joint-employer theory.[13] Finally, TEMA complains that it has only been included as a defendant because, for some unspecified reasons, Plaintiffs did not want to properly serve Toyota Motor Corporation by complying with the Hague Convention.

---

[8] Id. at ¶¶ 14, 27 and 31.

[9] Id. at ¶¶ 33-34.

[10] All three named Plaintiffs only filed charges of discrimination identifying TTTX as the employer.

[11] Relying upon *Way v. Mueller Brass Co.*, 840 F.2d 303 (5th Cir. 1988), TEMA argues that a "a party not named in an EEOC charge may not be sued under Title VII unless there is a clear identity of interest between it and the party named in the charge...."

[12] 129 S.Ct. 1937 (2009).

[13] *See Trevino v. Celanese Corp.*, 701 F. 2d 397, 404 (5th Cir. 1983).

**TMNA and TMS's Motion to Dismiss**

These defendants assert the same arguments advanced by TEMA. Specifically, they assert that the named Plaintiffs were not employees of TMNA or TMS. They further argue that Plaintiffs do not allege in their amended complaint that TMNA or TMS were joint employers. Finally, they note that Plaintiffs do not allege any specific wrongful acts attributable to them other than to accuse them of being wholly owned subsidiaries of TMC.

**Standard of Review**

Under FED. R. CIV. P. 12(b)(6), a district court must accept all well-pleaded facts as true and view those facts in the light most favorable to the plaintiff. *True v. Robles*, 571 F.3d 412, 417 (5th Cir. 2009). "Dismissal is appropriate when the plaintiff has not alleged enough facts to state a claim to relief that is plausible on its face and has failed to raise a right to relief above the speculative level." *Id.* (*quoting Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 570 (2007)) (internal quotations omitted).

When challenging a 12(b)(1) motion, the party asserting jurisdiction has the burden to prove that jurisdiction is proper. *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001). A district court may grant a motion to dismiss under Rule 12(b)(1) based on a failure to exhaust administrative remedies. *See Devaughn v. U.S. Postal Service*, 293 Fed. Appx. 276 (5th Cir. 2008); *Harris v. Honda*, 213 Fed. Appx. 258 (5th Cir. 2006). A motion to dismiss for lack of jurisdiction may be decided by the district court on one of three bases: the complaint alone, the complaint supplemented by undisputed facts evidenced in the record, or the complaint supplemented by undisputed facts plus the court's resolution of disputed facts. *Williamson v. Tucker*, 645 F.2d 404, 413 (5th Cir. 1981), *cert. denied*, 454 U.S. 897 (1981).

**Analysis**

A.  **Rule 12(b)(6) Motions**

It is undisputed that the three named Plaintiffs were employees of TTTX. Accordingly,

the only mechanism to establish Title VII liability against all of the other defendants in this case is to allege and establish that all of the various defendants were employers. Title VII prohibits discrimination by an "employer" based on "race, color, religion, sex, or national origin." *See* 42 U.S.C. § 2000e-2(a).

In *Trevino v. Celanese Corp.*, the Fifth Circuit adopted a "single employer" test to determine when two private entities should be aggregated for the purposes of determining whether they constitute an employer under Title VII. 701 F.2d 397 (5th Cir. 1983). The four-part *Trevino* test involves consideration of (1) interrelation of operations; (2) centralized control of labor relations; (3) common management; and (4) common ownership or financial control. *Id.* at 404. The second factor of this inquiry is deemed the most important. *Id. See also Turner v. Baylor Richardson Medical Center*, 476 F.3d 337, 344 (5th Cir. 2007) ("We place highest importance on the second factor, rephrasing and specifying it so as to boil down to an inquiry of 'what entity made the final decisions regarding employment matters related to the person claiming discrimination.'").

The doctrine of limited liability creates a strong presumption that a parent corporation is not the employer of its subsidiary's employees. *See Lusk v. Foxmeyer Health Corp.*, 129 F.3d 773, 778 (5th Cir. 1997). *See also Tipton v. Northrup Grumman Corp.*, 242 Fed. Appx. 187 (5th Cir. 2007) (reviewing the grant of a motion for summary judgment and concluding that a parent company was not a proper defendant in a Title VII case, absent evidence that parent and subsidiary had interrelated operations, centralized control of labor or employment decision, common management or common ownership or financial control); *Coleman v. New Orleans and Baton Rouge S.S. Pilots' Ass'n*, 437 F.3d 471 (5th Cir. 2006). The Fifth Circuit has stringently applied the *Trevino* factors. *See Johnson v. Crown Enterprises, Inc.*, 398 F.3d 339 (5th Cir. 2005) (Parent company and its subsidiary, the company for which truck driver worked, were not a "single enterprise," so as to support holding parent company liable for truck driver's § 1981

5

claims, arising out of subsidiary's failure to renew contract; although both companies operated from the same building and the subsidiary used the parent company for secretarial support and supplies, truck driver failed to present any evidence that the parent company actually made any of the subsidiary company's decisions, including decisions regarding the renewal of driver contracts).

The above cases were decided in the context of reviewing motions for summary judgment. Here, the argument is that motions to dismiss should be granted pursuant to Rule 12(b).

Plaintiffs argue they have met their pleading burden by alleging that TEMA, TMNA and TMS are wholly owned subsidiaries of TMC. They further argue that they have pled that TMC (through TEMA, TMNA and TMS) implement and maintain discriminatory employment practices directed against women working at TTAI, TTMA and TTTX. Plaintiffs specifically reference paragraphs 50-70 of their amended complaint as constituting sufficient pleadings to defeat the motions to dismiss.

Paragraphs 50 through 63 recite the founding of TMC (not a party to this case), allege that gender discrimination is "entrenched" in Japanese society, and allege that TMC discriminates against women.

Paragraph 64 alleges that TMC sends its Japanese male executives into management and supervisory positions to the various subsidiaries in the United States and that this "facilitates" gender discrimination occurring in the American subsidiaries.

Paragraphs 65 and 66 allege that TMC has failed to train their male executives to "understand and appreciate" the differing American work environment. Plaintiffs summarily state that Title VII's prohibition of sex discrimination is "not commonly understood or adhered to at" the various American subsidiaries.

Paragraphs 67 through 70 generally allege that TMC implements its discriminatory

6

practices through "Toyota USA" (a phrase Plaintiffs use to reference TMNA, TMS and TEMA).

Plaintiffs argue in the "Opposition to [TEMA's] Motion to Dismiss" that the above paragraphs in essence plead that "Toyota USA, TTAI, TTMA, TTTX have interrelated operations, share common ownership, have common financial control, operate under common management and share centralized control over their labor relations."[14]  The Court disagrees that these allegations suffice under *Twombly* and *Iqbal*.

Although the Fifth Circuit has not yet addressed the application of *Twombly* and *Iqbal* to an allegation of "joint employer" liability, this Court notes that other courts have found dismissal under Rule 12(b) proper when the allegations are conclusory.  *See E.E.O.C. v. American Laser Centers LLC*, 2010 WL 3220316 (E.D. Cal. 2010) ("EEOC has not alleged any specific facts to support its claim that the Defendants were alter egos, joint-employers, successors, or an integrated enterprise.  EEOC's allegation that the conduct at issue is attributable to all Defendants because each acted 'as a successor, alter ego, joint employer, integrated enterprise, agent, employee .... or under the direction and control of the others' is merely a conclusory allegation.  EEOC does not plead any specific factual allegations that explain how the four Defendant companies are related to each other. The Court is not required to accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences.").

In a post *Twombly* case the District of Connecticut denied a motion to dismiss.  In *Trusz v. UBS Realty Investors*, 2010 WL 1287148 (D. Conn. 2010), the court concluded the following allegations were sufficient to defeat a Rule 12(b) motion to dismiss.  The plaintiff alleged "he was directly employed by UBS Realty, his employment was governed by UBS AG's policies and procedures and that UBS AG officials were involved in and made decisions concerning the functioning of UBS Realty."  The Court concluded that Plaintiff pled "a sufficient level of

---

[14]Opposition to [TEMA's] Motion to Dismiss (Docket Entry No. 59) at p.3.  See also Opposition to [TMNA and TMS's] Motion to Dismiss (Docket Entry No. 60) at pp. 3-4.

7

interrelatedness and control in human resources decisions between UBS AG and UBS Realty."[15]

In this case, however, Plaintiffs have not pled that they were subject to any specific employment policies and procedures of TMNA, TMS or TEMA. They also do not allege that the human resources departments among TTTX and these defendants were interrelated (other than to conclusorily state that they all were following TMC's discriminatory practices). In summary, Plaintiffs fail to plead enough underlying facts to support their conclusory claims of interrelated operations, common ownership, common financial control, operation under common management and centralized control over labor relations. *See Leung v. New York Univ.*, 2010 WL 1372541 (S.D. N.Y. 2010) ("plaintiff has not provided evidence sufficient to adduce that defendants N.Y.U. and the Medical Center represent a single enterprise"); *Coleman v. Sentinel Transp., LLC*, 2009 WL 3834438 (S.D. Tex. 2009) ("[Plaintiff] has not made allegations concerning any of the four substantive law elements for showing the existence of a single, integrated entity. He has failed to state a claim against DuPont or ConocoPhillips under pleading law even as it existed before *Twombly* and *Iqbal*. Those defendants' partial ownership of Sentinel is not a basis for liability, as a matter of law. And a barebones assertion of partial ownership neither provides fair notice of Coleman's claims against DuPont and ConocoPhillips or the grounds on which they rest."); *Campion v. Northeast Utilities*, 598 F. Supp.2d 638 (M.D. Pa. 2009) ("Campion alleges that NU and NU Enterprises owns both NGS and Select. However, '[s]ole ownership alone is never enough to establish parent liability.' (citation omitted). Other

---

[15]*See also Myers v. Garfield & Johnson Enterprises, Inc.*, 679 F.Supp.2d 598 (E.D. Pa. 2010) (Plaintiff alleged sufficient facts regarding the joint employment issue. "First, the Amended Complaint includes allegations suggesting that Jackson [Hewitt] has the authority to 'promulgate work rules' and 'set the conditions of employment.' [internal citation omitted]. Plaintiff alleges that she was covered by Jackson Hewitt's sexual harassment and other workplace policies ... and that Jackson Hewitt had the authority to require G & J managers to submit to training and to obey all applicable laws.... The Jackson Hewitt Code of Conduct, which plaintiff discussed in the Amended Complaint, also requires that franchisees terminate their employees in certain circumstances, which further supports plaintiff's allegations that Jackson Hewitt exercised significant control over hiring and firing decisions.").

than the conclusory allegation that 'NGS, NU, NU Enterprises and Select are interrelated companies,' Campion makes no further factual averments from which it could be found that these entities are an integrated enterprise. Instead, Campion argues that the Court should 'require each defendant to prove that they have not assumed responsibility for the liabilities of NGS.' However, Campion may not shift the burden to the defendants in this manner. Although the integrated enterprise test is a factual question, Campion must set forth in his complaint some factual allegations to support his claim and may not rely on mere legal labels and conclusions.").

The Defendants' Rule 12(b)(6) motions are granted. Plaintiffs have not alleged enough facts to state a claim to relief that is plausible on its face and have failed to raise a right to relief above the speculative level.

### B.     Rule 12(b)(1) Motions

The defendants also argue that because they were not named in the charge of discrimination, plaintiffs have failed to exhaust their administrative remedies and dismissal of the claims is required.

Employment discrimination plaintiffs must exhaust their administrative remedies before pursuing claims in federal court. *Taylor v. Books a Million, Inc.*, 296 F.3d 376, 379 (5th Cir. 2002). Exhaustion under Title VII requires filing a timely charge of discrimination with the EEOC and receipt of a "right-to-sue" letter. 42 U.S.C. § 2000e-5 (e) and (f); *see also Taylor*, 296 F.3d at 379. Exhaustion "serves the dual purposes of affording the EEOC and the employer an opportunity to settle the dispute through conciliation, and giving the employer some warning as to the conduct about which the employee is aggrieved." *Hayes v. MBNA Tech., Inc.*, 2004 WL 1283965, at *3 (N.D. Tex. June 9, 2004) (citing *Alexander v. Gardner-Denver Co.*, 415 U.S. 36, 44, 94 S.Ct. 1011, 39 L.Ed.2d 147 (1974), and *Sanchez v. Standard Brands, Inc.*, 431 F.2d 455, 466 (5th Cir. 1970)). A plaintiff's failure to exhaust administrative remedies deprives the court of jurisdiction over Title VII claims. *See Barnes v. Levitt*, 118 F.3d 404, 408 (5th Cir. 1997).

In this case it is undisputed that the charge of discrimination filed by the three Plaintiffs did not name either TEMA, TMNA or TMS.

The Fifth Circuit has allowed a party not named in an EEOC charge to nevertheless be named as a defendant in an employment discrimination complaint, but only in very limited circumstances. In *Terrell v United States Pipe & Foundry Co.*, 644 F2d 1112 (5th Cir. 1981), the Court stated that if it was within the foreseeable scope of the EEOC investigation, an unnamed party could be added as a defendant. It nevertheless concluded that the international union was "insufficiently implicated" in the EEOC investigation. Plaintiffs do not argue this exception applies.

A district court in this circuit has also allowed a party not named in an EEOC charge where it was a successor employer to an employer named in the charge. *See Escamilla v Mosher Steel Co.*, 386 F Supp. 101 (S.D. Tex. 1975). That is not the situation before us in this case.

Finally, two district courts in this circuit have allowed unnamed parties to be sued where there was a "clear identity of interest" between the unnamed party and the party named in the EEOC charge. *See Nigro v. St. Tammany Parish Hosp.*, 377 F. Supp. 2d 595 (E.D. La. 2005) (No identity of interest found. The only interrelation of operations between defendants is that EM-1 supplied physicians who worked in the St. Tammany Parish Hospital emergency room.). *But see Parks v. Mississippi Dept. of Transp.*, 380 F. Supp. 2d 776 (N.D. Miss. 2005) (Mississippi Transportation Commission (MTC) and Mississippi Department of Transportation (MDOT) had common identity of interest, such that filing of EEOC charge against MDOT put MTC on notice of potential civil liability under Title VII; MDOT existed only to carry out directives of MTC.).

The Second and Third Circuit consider four factors in determining whether an identity of interest exists: (1) whether the role of the unnamed party could through reasonable effort by the complainant be ascertained at the time of the filing of the EEOC complaint; (2) whether, under

the circumstances, the interests of a named party are so similar as the unnamed party's that for the purpose of obtaining voluntary conciliation and compliance it would be unnecessary to include the unnamed party in the EEOC proceedings; (3) whether its absence from the EEOC proceedings resulted in actual prejudice to the interests of the unnamed party; and (4) whether the unnamed party has in some way represented to the complainant that its relationship with the complainant is to be through the named party. *Johnson v. Palma*, 931 F.2d 203, 209 -10 (2d Cir.1991) *(quoting Glus v. G.C. Murphy Co.*, 562 F.2d 880, 888 (3rd Cir. 1977)).

Reviewing the above factors, the Court in *Vital v. Interfaith Medical Center*, 168 F.3d 615 (2d Cir. 1999) dismissed an international union as a defendant in a Title VII case. There does not appear to be any clear Fifth Circuit guidance on this issue. Reviewing the factors adopted in other circuits, this Court concludes: (1) Plaintiffs could have, through reasonable effort, ascertained the role of TMC, TEMA, TMNA and TMS at the time of the filing of the EEOC charges; (2) the interests of the named party are not similar to the unnamed parties'; (3) the absence from the EEOC proceedings resulted in actual prejudice to the interests of the unnamed parties; and (4) the unnamed parties have not represented to the Plaintiffs that their relationship with them is to be through the named party.

In this case Plaintiffs seek not to include the parent corporation (which in many instances is not proper), but seek to add sister subsidiary corporations.

The Defendants' Rule 12(b)(1) motions are granted. Plaintiffs failed to exhaust their administrative remedies by failing to name TEMA, TMNA and TMS as respondents in their EEOC charge.

### C. Plaintiffs' Motion for Leave to Amend

When a plaintiff's complaint fails to state a claim, the court should generally give the plaintiff at least one chance to amend the complaint under Rule 15(a) before dismissing the action with prejudice. *See Great Plains Trust Co. v. Morgan Stanley Dean Witter & Co.*, 313

F.3d 305, 329 (5th Cir. 2002) ("[D]istrict courts often afford plaintiffs at least one opportunity to cure pleading deficiencies before dismissing a case, unless it is clear that the defects are incurable or the plaintiffs advise the court that they are unwilling or unable to amend in a manner that will avoid dismissal."); *see also United States ex rel. Adrian v. Regents of the Univ. of Cal.*, 363 F.3d 398, 403 (5th Cir. 2004) ("Leave to amend should be freely given, and outright refusal to grant leave to amend without a justification ... is considered an abuse of discretion.") (internal citation omitted). However, a court may deny leave to amend a complaint if the court determines that "the proposed change clearly is frivolous or advances a claim or defense that is legally insufficient on its face ...." 6 Charles A. Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice and Procedure § 1487 (2d ed.1990) (footnote omitted); *see also Martin's Herend Imports, Inc. v. Diamond & Gem Trading United States of Am. Co.*, 195 F.3d 765, 771 (5th Cir. 1999) ("A district court acts within its discretion when dismissing a motion to amend that is frivolous or futile.") (footnote omitted).

    In this case amending the complaint would be futile.  Plaintiffs did not name TEMA, TMNA and TMS as respondents in their EEOC charge.  It is likely that the limitations period to do so has passed.  Further, it is likely that the defects are not curable.  There is no precedent found for naming sister subsidiary corporations liable under a joint employer theory.  The Court also concludes that Plaintiffs are not prejudiced by any denial of leave to amend.  If any employee of  TEMA, TMNA or TMS wishes to pursue discrimination charges against their employer, on behalf of themself or as a class action, they are free to do so.  Finally, this case was originally filed on June 24, 2009, with little activity by Plaintiffs, and amendment would only increase delay in this case.  Plaintiffs' motion for leave to amend the complaint is denied.

**Conclusion**

Toyota Motor Engineering & Manufacturing North America, Inc.'s (TEMA) motion to dismiss (Docket Entry No. 50) is GRANTED. Toyota Motor North America, Inc. (TMNA) and Toyota Motor Sales, U.S.A., Inc.'s (TMS) motion to dismiss (Docket Entry No. 51) is GRANTED.

It is so ORDERED.

SIGNED this 25th day of August, 2010.

_____
XAVIER RODRIGUEZ
UNITED STATES DISTRICT JUDGE